UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ANNE WECK,

    Plaintiff,                Civil Action No. 16-11027
                                     Honorable John Corbett O'Meara
    v.                       Magistrate Judge Elizabeth A. Stafford

NANCY A. BERRYHILL[1],
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 14]**

Plaintiff Karen Weck appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 14] be **GRANTED**;

---

[1] This substitution is made pursuant to Federal Rule of Civil Procedure 25(d).

- Weck's motion [ECF No. 12] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Weck's Background and Disability Applications

Born January 22, 1967, Weck was 44 years old when she submitted her applications for disability benefits on January 10, 2012. [ECF No. 9-6, Tr. 360-61]. She has a high-school education, and last worked as a bartender. [*Id.*, Tr. 342]. Weck alleges a disability onset date of December 31, 2009, and that she is disabled by "meningitis molerettes (sic), stomach problems, broken back complications, back causes problems with lung and breathing, hip problem, depression." [ECF No. 9-3, Tr. 134].

After the Commissioner denied both disability applications initially, Weck requested a hearing, which took place on October 30, 2014, and included the testimony of Weck and a vocational expert (VE). [R. 9-2, Tr. 80-133]. In a January 20, 2015, written decision, the ALJ found Weck to be not disabled.[2] [*Id.*, Tr. 19-37]. The Appeals Council denied review, making

---

[2] A prior ALJ found in February 2013, that Weck was not disabled. The Appeals Council vacated that decision and remanded to the instant ALJ. [ECF No. 9-3, Tr. 183-84].

2

the ALJ's decision the final decision of the Commissioner, and Weck timely filed for judicial review. [*Id.*, Tr. 1-6; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] Second, if the claimant has not had a severe impairment or a combination of such impairments[4] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be

---

[3] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[4] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Weck was not disabled. At the first step, she found that Weck had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 9-2, Tr. 22]. At the second step, she found that Weck had the severe impairments of "degenerative disc disease, aseptic meningitis, herpes, major depressive disorder, mood disorder, generalized anxiety disorder, borderline personality disorder, somatoform disorder, and cannabis dependence." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*].

Between the third and fourth steps, the ALJ found that Weck had the

4

RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes, or scaffolds. She can never push/pull with either lower extremity. The claimant can tolerate frequent exposure to pulmonary irritants and occasional exposure to hazards such as heights, moving mechanical parts, and operating a motor vehicle. She is limited to performing simple, routine, and repetitive tasks and to occasional contact with the public.

[ECF No. 9-2, Tr. 24]. At step four, the ALJ found that Weck could not perform past relevant work. [*Id.*, Tr. 34]. With the assistance of VE testimony [*see id.*, Tr. 24-25], the ALJ determined at step five that based on Weck's age, education, work experience and RFC, she could perform the positions of document preparer, bench hand, and ticket checker, for which significant jobs existed in the economy. [*Id.*, Tr. 36].

## II.  ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56.

Weck argues that the ALJ's decision that she did not meet Listing 1.04 is not supported by substantial evidence and that the ALJ did not properly assess her RFC. Weck bears the burden of demonstrating that her conditions meet a listing and that her RFC is insufficiently restrictive. The Court finds that she has not met those burdens. *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir.1994).

**B.**

Listing 1.04 requires evidence of a spinal disorder "resulting in compromise of a nerve root" shown by either: (A) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)"; (B) spinal arachnoiditis; or (C) "[l]umbar spinal stenosis resulting in pseudoclaudication . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  The medical criteria required to meet a listing is higher than that demanded for establishing a disability. *Id.* at 532.  "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

It is irrefutable that Weck has spinal disorders.  She was hit by a motor vehicle in 1988, resulting in a fractured spine at L1-L2.  [ECF No. 9-7, Tr. 519].  And within the relevant period, diagnostic testing revealed abnormalities of Weck's spine.  A 2010 x-ray revealed a subtle superior

7

endplate compressions at L1 and L2, which was unchanged compared to a 2007 MRI exam; postsurgical bone fusion material present extending from T12 through L2; and mild to moderate degenerative disk narrowing at L4-L5. [ECF No. 9-7, Tr. 583]. In 2012, an MRI revealed mild degenerative changes of the thoracic spine with very small central disk herniation at the T6-7 disk level. [*Id.*, Tr. 680]. At the T7-8 disk level, mild disk space narrowing and minimal posterior bulging disk; and at the T8-9 disk level, mild disk space narrowing and mild degenerative changes of anterior vertebral endplates anteriorly and to the left. There was no spinal canal stenosis. [*Id.*, Tr. 680-81]. The cervical spine MRI demonstrated mild degenerative changes somewhat progressive at the C5-6 disk level where there is disk space narrowing, mild anterior spurring and particularly left posterior and uncovertebral spurring with only mild narrowing of the left C5-6 neural foramen. There was no spinal canal stenosis noted in the cervical spine. [ECF No. 9-9, Tr. 1139-40].

An EMG and MRI were ordered in March 2013. [ECF No. 9-8, Tr. 1064]. The EMG showed a normal examination of the lower extremities from a neurologic standpoint, and confirmed that she did not have radiculopathy or neuropathy. [*Id.*, Tr. 1064, 1072]. The MRI done on Weck's spine revealed advanced degenerative disk disease at the L4-5

8

level with a decrease in size of herniated disk, compared with a 2007 MRI; a stable degenerative disk disease and small herniated disk at the L5-S1 level, without resulting in significant spinal canal or neural foraminal stenosis; and a stable chronic mild superior endplate compression fracture deformities of the L1 and L2 levels. It was also noted that combination of a herniated disk, disk bulge and facet joint arthropathy at this level results in mild stenosis of the spinal canal and of the inferior aspect of the bilateral neural foramina. [ECF No. 9-9, Tr. 1157-59].

With this and other evidence, the ALJ determined that Weck's degenerative disc disease was a severe impairment, but she also found that Weck's "impairment does not reach the severity required by 1.04 in that there is no evidence of a nerve root compression characterized by pain, limitation of motion of the spine, motor loss, sensory or reflex loss, and positive straight leg-raise testing." [ECF No. 9-2, Tr. 23]. The ALJ further stated that Weck's condition did not include "other elements required such as spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." [*Id.*].

Weck takes issue with the ALJ's finding that she did not meet Listing 1.04, arguing that, as the record shows, she had limitations in motion and suffered pain. [ECF No. 12, PgID 1309]. She notes that she had

neuroforaminal narrowing, which she says equates to nerve compression. [*Id.*, PgID 1310-11; ECF No. 9-7, Tr. 678-79]. Weck cites to records showing her to have limited ranges of motion, a positive straight leg raising test, a loss of strength, and numbness. [ECF No. 12, PgID 1311; citing ECF No. 9-7, Tr. 506, 508, 515-16, 533, 579, 650]. But when stating that she was had neural foramina narrowing, Weck did not cite to the medical record; she cited to the ALJ's decision. [ECF No. 12, PageID 1295, citing ECF No. 9-2, Tr. 22]. On the cited page, the ALJ referred to an MRI that found "only mild narrowing of the left C5-C6 neural foramen." [ECF No. 9-7, Tr. 679]. And the document that Weck cites as an example of records showing her as having had numbness and weakness is an MRI order form that states that Weck had a history of "[n]umbness/weakness of the legs and arms," without referencing when she suffered those symptoms or any testing to confirm their existence. [ECF No. 9-7, Tr. 579].

In addition, the Commissioner notes that Weck's medical records showed at other times full ranges of motion and strength, a negative straight leg raising tests, and normal gait. [ECF No. 14, PgID 1338, citing ECF No. 9-7, Tr. 525, 529, 572, 649, 664, 667, ECF No. 9-8, Tr. 1029, 1085, 1090, 1096, 1104, 1109, 1127, 1132; ECF No. 9-9, Tr. 1205, 1222]. Numerous records also show that her motor and sensory function were

10

intact. [ECF No. 9-7, Tr. 525, 572, 649, 667; ECF No. 9-8, Tr. 1029; ECF No. 9-9, Tr. 1198, 1222-23]. And to the extent that Weck had the required symptomology intermittently, she does not meet the twelve month durational requirement for establishing a disability. Social Security Ruling (SSR) 82-52, 1982 WL 31376 (severe impairment must last or be expected to last for at least 12 continuous months); 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."); *Ridgeway v. Comm'r of Soc. Sec.*, No. 1:13-CV-389, 2015 WL 751963, at *4 (E.D. Tenn. Feb. 23, 2015) (Listing 1.04 could not be met with intermittent findings).

For these reasons, Weck does not overcome her burden of showing that she meets Listing 1.04, and the ALJ's determination that she did not should be affirmed.

## C.

Weck argues that, in crafting her RFC, the ALJ failed to consider: (1) Weck being off task more than 15 percent of a workday due to an inability to maintain concentration and periods of medical treatment and hospitalizations; and (2) Weck's concentration limitations in finding that she could complete "simple, routine and repetitive tasks." [ECF No. 12, PageID

11

1313-14]. Weck specifically claims that the ALJ wrongly ignored the findings of Janette S. Caputo, Ph.D., along with her history of "severely depressed GAF scores, diagnosis and treatment." [*Id.*, ECF No. 1315].

The ALJ found that Weck had mild restrictions in activities of daily living and moderate difficulties in both social functioning and concentration, persistence or pace. [ECF No. 9-2, Tr. 23]. In so finding, the ALJ gave Dr. Caputo's opinion partial weight because "while the record as a whole supports the presence of some mental limitations, it does not show that the claimant's emotional difficulties would limit her as much as Dr. Caputo asserts." [ECF No. 9-2, Tr. 33]. As noted by the ALJ, Dr. Caputo found in 2012 that Weck was able to understand and follow simple and moderately complex instructions, had the ability to acquire new learning and was employable from a cognitive perspective, but opined that she would be a very poor candidate for employment "from an emotional perspective." [ECF No. 9-7, Tr. 636-37]. The ALJ explained that more recent records showed that Weck's emotional impairments had improved and that, by 2014, she was not suffering from depression at all. [ECF No. 9-2, Tr. 33; citing ECF No. 9-8, Tr. 1040 (Weck "was taken off her antidepressant as they did not feel that she has depression or anxiety."); ECF No. 9-9, Tr. 1220 (Weck "denies feeling depressed.")]. So even if Dr. Caputo correctly found that

Weck was a poor candidate for employment from an emotional perspective in 2012, the ALJ had substantial evidence for determining that she was no longer so limited.

In addition, the ALJ gave significant weight to the April 2012 opinion of state psychological consultant, Ron Marshall, Ph.D., that despite her moderate difficulties in maintaining concentration, persistence and pace, Weck could still follow and retain simple and moderately complex instructions. [ECF No. 9-3, Tr. 139, 144]. Like Dr. Caputo, Dr. Marshall found that Weck was able to acquire new learning at a level that would serve for employment. [*Id.*]. The ALJ's assessed RFC limiting Weck to simple, routine and repetitive tasks is consistent with the findings of both Dr. Caputo and Dr. Marshall.

Weck takes issues with the ALJ not explicitly indicating her difficulties with concentration in the RFC or the hypothetical question to the vocational expert, but the ALJ was not required to "incorporate a listing of the claimant's medical conditions, so long as the vocation expert's testimony . . . takes into account the claimant's medical functional limitations, i.e. what he or she can and cannot do." *McNamara v. Comm'r of Soc. Sec.*, 2011 WL 7025855, at *12 (E.D. Mich. Dec. 1, 2011); *Marini v. Comm'r of Soc. Sec.*, No. 13-10067, 2014 WL 1230034, at *6 (E.D. Mich. Mar. 25, 2014).

In giving the hypothetical to the vocational expert, the ALJ restricted Weck to simple, routine and repetitive tasks with only occasional contact with the public. [ECF No. 9-2, Tr. 75].

Regarding the ALJ's decision to accord little weight to Weck's GAF scores, which ranged from 35 to 49, [ECF No. 9-7, Tr. 636; ECF No. 9-8, Tr. 877, 913, 970, 986; ECF No. 9-2, Tr. 34], the Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). The *Kornecky* court found that any suggestion from the claimant's GAF score that she could not work was "countered by the vocational expert's testimony that someone with her limitations could still do certain widely available work." *Id.* The same is true here.

Weck's argument that the ALJ's assessment of her RFC failed to acknowledge that she would be off task due to medical treatment, pain, depression or other medical impairment is also without merit. Weck points out that the vocational expert testified that if a claimant were off-task greater than 15 percent of an 8-hour workday, that claimant would be precluded from employment. [ECF No. 12, PageID 1314, referring to ECF No. 9-2, Tr. 76-77]. But instead of presenting medical evidence that she

14

would be off task for more than 15 percent of the workday, Weck asserts that that limitation is "apparent" because she receives antiviral medications via a PICC line and lacks focus. [ECF No. 12, PageID 1314]. This assertion is not enough for Weck to meet her burden of showing that the assessed RFC is insufficiently restrictive.

### D.

Weck alludes to other alleged errors in preliminary portions of her motion for summary judgment, but does not expound on those matters in the argument section of her motion. For examples, she claims that the ALJ cherry picked evidence from the record and did not "convincingly support" the finding assertion that she lacks credibility. [ECF No. 12, PageID 1297-98]. However, Weck waived those arguments. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (citation and internal quotations omitted).

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 14] be **GRANTED**; that Weck's motion

[ECF No. 12] be **DENIED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: June 16, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
